1  PAUL L. REIN, Esq. (SBN 43053)
2  CELIA McGUINNESS, Esq. (SBN 159420)
   CATHERINE M. CABALO, Esq. (SBN 248198)
   LAW OFFICES OF PAUL L. REIN
3  200 Lakeside Drive, Suite A
   Oakland, CA  94612
4  Telephone:  510/832-5001
   Facsimile:   510/832-4787
5  reinlawoffice@aol.com

6  BRIAN GEARINGER, Esq. (SBN 146125)
   GEARINGER LAW GROUP
7  825 Van Ness Ave., 4th Floor
   San Francisco, CA 94109-7891
8  Telephone:  415/440-3102
   Facsimile:   415/440-3103
9  brian@gearingerlaw.com

10 Attorneys for Plaintiff
   FLORINE HOLMES
11

12           IN THE UNITED STATES DISTRICT COURT

13        IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

14
   FLORINE HOLMES,                     Case  No. C09-4785 JW
15                                     Civil Rights
        Plaintiff,
16
   v.
17                                     SETTLEMENT AGREEMENT
   DENNY'S, INC.; PROMPT FOOD          AND [PROPOSED] COURT
18 SERVICE, INC.; C B                  ORDER REGARDING
   DEVELOPMENT #5, INC.; FRANK         INJUNCTIVE RELIEF AND
19 HERNANDEZ; AND DOES 1-10,           DAMAGES
   INCLUSIVE,
20
        Defendants.
21 _____/

22

23       1.    Plaintiff FLORINE HOLMES ("Plaintiff") filed a Complaint in this

24 action on October 7, 2009, to obtain recovery of damages for her discriminatory

25 experiences, denial of access, and denial of her civil rights, and to enforce

26 provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

27 §§ 12101 et seq., and California civil rights laws against Defendants DENNY'S,

28 INC.; PROMPT FOOD SERVICE, INC.; C B DEVELOPMENT #5, INC.; and

IT IS SO ORDERED
AS MODIFIED
Judge James Ware
5/18/2010

LAW OFFICES OF
PAUL L. REIN
100 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-1- S:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

1  FRANK HERNANDEZ (together sometimes "Defendants"), relating to the

2  condition of Defendants' public accommodations as of September 20, 2009 and

3  continuing.  Plaintiff has alleged that Defendants violated Title III of the ADA

4  and sections 51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and

5  sections 19955 *et seq.* of the California Health and Safety Code by failing to

6  provide full and equal access to their facilities at 311 S. Mathilda Ave.,

7  Sunnyvale, California, and by their treatment of Plaintiff, a physically disabled

8  person.

9       2.      Defendants DENNY'S, INC.; PROMPT FOOD SERVICE, INC.;

10  and FRANK HERNANDEZ deny the allegations in the Complaint and by

11  entering into this Settlement Agreement and Order Regarding Injunctive Relief

12  (sometimes the "Agreement" or "Agreement and Order") do not admit liability to

13  any of the allegations in Plaintiff's Complaint filed in this action.  The parties

14  hereby enter into this Agreement for the purpose of resolving the injunctive relief

15  aspects of this lawsuit without the need for protracted litigation and without the

16  admission of any liability.  The issues of damages, attorney fees, costs and

17  expenses will be the subject of further negotiations and litigation if necessary.

18

19  **JURISDICTION:**

20       3.      The parties to this Agreement agree that the Court has jurisdiction of

21  this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the

22  Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 *et seq.* and

23  pursuant to supplemental jurisdiction for alleged violations of California Health

24  & Safety Code sections 19955 *et seq.*; Title 24, California Code of Regulations;

25  and California Civil Code sections 51, 52, 54, 54.1, 54.3, and 55.

26       4.      In order to avoid the costs, expense, and uncertainty of protracted

27  litigation, the parties to this Agreement agree to entry of this Order to resolve all

28  claims regarding injunctive relief raised in the Complaint filed with this Court.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-2-   G:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

1  Accordingly, they agree to the entry of this Order without trial or further

2  adjudication of any issues of fact or law concerning Plaintiff's claims for

3  injunctive relief.

4      WHEREFORE, the parties to this Agreement hereby agree and

5  stipulate to the Agreement's terms and the Court's entry of this Agreement and

6  Order, which provide as follows:

7

8  **SETTLEMENT OF INJUNCTIVE RELIEF:**

9      5.   This Agreement and Order shall be a full, complete, and final

10  disposition and settlement of Plaintiff's claims against Defendants for injunctive

11  relief that have arisen out of the subject Complaint.  The parties agree that there

12  has been no admission or finding of liability or violation of the ADA and/or

13  California civil rights laws, and this Agreement should not be construed as such.

14      6.   The parties agree and stipulate that the corrective work will be

15  performed in compliance with the standards and specifications for disabled access

16  as set forth in the California Code of Regulations, Title 24-2, and the Americans

17  with Disabilities Act Accessibility Guidelines, unless other standards are

18  specifically agreed to in this Agreement.

19      a)   **Remedial Measures:** Defendants PROMPT FOOD

20  SERVICE, INC. and DENNY'S, INC. agree to perform corrective work at 311 S.

21  Mathilda Ave., Sunnyvale, California. The scope of the corrective work agreed

22  upon by the parties includes the following:

23      i.   <u>Parking Lot</u>: Per Plaintiff's expert Jonathan Adler's

24          recommendations one through three as set forth in his report, a

25          copy of which is attached to this Agreement as **Attachment A**,

26          Defendants PROMPT FOOD SERVICE, INC. and DENNY'S,

27          INC. agree to all of the recommendations set forth therein as

28          listed below:

LAW OFFICES OF
**PAUL L. REIN**
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-3- S:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 3-10-10.wpd

1              (1)    Install one additional accessible parking space.

2              (2)    Repave and stripe the two existing accessible parking

3                       spaces.

4              (3)    Install "Van-accessible" signage at the van parking

5                       space and enforcement signs at the parking lot

6                       entrances.

7     ii.    Route to Entrance: Per Mr. Adler's recommendations one

8           through five as set forth in his report, Defendants PROMPT

9           FOOD SERVICE, INC. and DENNY'S, INC. agree to all of

10         the recommendations set forth therein as listed below:

11           (1)    Replace the existing curb with a "Case-C" curb ramp.

12          (2)    Install handrails at both sides of the sixteen-foot long

13                   section of walkway that slopes more steeply than 5%,

14                  which is located on the south side of the building where

15                  the route from accessible parking joins the public

16                  sidewalk.

17          (3)    Install a handrail in the interior side of the new

18                  pedestrian ramp on Mathilda Ave.

19         (4)    Paint a two-inch wide contrasting color stripe at the

20                 outer edge of each stair tread and install handrails on

21                 each side of the stairway.

22         (5)    Adjust the door closer to require no more than five (5)

23               pounds of force to open the door and install a sign at the

24               entry that displays the symbol of accessibility.

25    iii.    Men's Restroom:

26         (1)    Raise the tactile signs sixty (60) inches above the door

27              and replace the existing signage with more high contrast

28              signage, although the existing signage already contrasts

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-4-
S:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

1        the door and are clearly visible (see Figure C1 of

2        Adler's report (**Attachment A** to this Agreement)).

3        (2)   Adjust the door pressure of the men's bathroom door to

4              less than five (5) pounds and install a power door

5              opener.

6        (3)   Adjust the swing of the stall door outward, away from

7              the interior of the stall.

8        (4)   Relocate the side grab bar, coat hook, toilet paper and

9              seat cover dispensers to meet requirements and wrap

10             lavatory pipes in insulation.

11       (5)   Lower the urinal from 20 ½" to a height no greater than

12             17" above the finished floor.

13    iv.   Women's Restroom:

14       (1)   Install tactile signage on the wall adjacent to the

15             latching side of the door, and replace the signs with a

16             higher contrast color.

17       (2)   Adjust the door closer to require no more than five

18             pounds of force to open and close the door.

19       (3)   Modify the women's restroom as outlined in Mr. Adler's

20             April 20, 2010 letter to defense expert Peter Margen, a

21             copy of which is attached to this Agreement as

22             **Attachment B.**

23       (4)   Relocate the side grab bar, toilet paper and seat cover

24             dispensers to meet requirements and wrap the lavatory

25             pipes with insulation.

26    v.   Dining Room Seating:   Replace existing tables as needed to

27          ensure eight (8) wheelchair accessible seating spaces located

28          on accessible routes.

LAW OFFICES OF
PAUL L. REIN
00 LAKESIDE DR., SUITE A
1AKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-5-\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

1    vi.   Other Requested Actions: PROMPT FOOD SERVICE, INC.

2          and DENNY'S, INC. agree to revise the franchise manual to

3          include a policy that advises employees that disabled patrons

4          are entitled to full and fair access and will not need to self

5          identify.

6    b)   **Timing of Injunctive Relief:**  Defendants PROMPT FOOD

7  SERVICE, INC. and DENNY'S, INC. will submit plans for all corrective work to

8  the appropriate governmental agencies within 30 days of the signing of this

9  Agreement by the parties.  Defendants PROMPT FOOD SERVICE, INC. and

10 DENNY'S, INC. will commence work within 30 days of receiving approval from

11 the appropriate agencies.  Defendants PROMPT FOOD SERVICE, INC. and

12 DENNY'S, INC. will complete all work within 180 days of commencement.  In

13 the event that unforeseen difficulties prevent Defendants from completing any of

14 the agreed-upon injunctive relief, Defendants or their counsel will notify

15 Plaintiff's counsel in writing within 15 days of discovering the delay.  Defendants

16 or their counsel will notify Plaintiff's counsel when the corrective work is

17 completed, and in any case will provide a status report no later than 210 days

18 from the entry of this Agreement.

19    c)   Defendants will notify Plaintiff in writing at the end of 210

20 days as to the current status of agreed to injunctive relief, and every 90 days

21 thereafter until all access is provided.   If Defendants fail to provide injunctive

22 relief on the agreed to timetable and/or fail to provide timely written status

23 notification, and Plaintiff files a motion with the court to obtain compliance with

24 these terms, Plaintiff reserves the right to seek additional attorney fees for all

25 compliance work necessitated by Defendants' failure to keep their agreement.

26 //

27 //

28 //

LAW OFFICES OF
**PAUL L. REIN**
00 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-6- C:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

**DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

8.     The parties have not reached agreement regarding Plaintiff's claims for damages, attorneys fees, litigation expenses and costs. These matters will be the subject of future negotiation or litigation as necessary.

**ENTIRE AGREEMENT:**

9.     This Agreement and Order constitute the entire agreement between the signing parties on the matters of injunctive relief, and no other statement, promise or agreement, either written or oral, made by any of the parties or agents of any of the parties that is not contained in this written Agreement shall be enforceable regarding the matters of injunctive relief described herein. This Agreement applies to Plaintiff's claims for injunctive relief only and does not resolve Plaintiff's claims for damages, attorney fees, litigation expenses and costs, which shall be the subject of further negotiation and/or litigation. The parties stipulate and both parties request the Court not dismiss the case, as the issues of damages and attorney fees are still before the Court.

**AGREEMENT BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

10.     This Agreement shall be binding on Plaintiff FLORINE HOLMES; Defendants DENNY'S, INC.; PROMPT FOOD SERVICE, INC.; and FRANK HERNANDEZ and any successors in interest. The parties have a duty to so notify all such successors in interest of the existence and terms of this Agreement during the period of the Court's jurisdiction of this Agreement.

//
//
//
//

LAW OFFICES OF
PAUL L. REIN
00 LAKESIDE DR., SUITE A
JAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-7-
S:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

11.    Each of the parties to this Agreement understands and agrees that there is a risk and possibility that, subsequent to the execution of this Agreement, any or all of them will incur, suffer or experience some further loss or damage with respect to the lawsuit which are unknown or unanticipated at the time this Agreement is signed. Except for all obligations required in this Agreement, the parties intend that this Agreement apply to all such further loss with respect to the lawsuit, except those caused by the parties subsequent to the execution of this Agreement. Therefore, except for all obligations required in this Agreement, this Agreement shall apply to and cover any and all claims, demands, actions and causes of action by the parties to this Agreement with respect to the lawsuit, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

This waiver applies to the injunctive relief aspects of this action only and does not include resolution of Plaintiff's damages, attorney fees, litigation expenses and costs.

12.    Except for all obligations required in this Agreement, and exclusive of the referenced continuing claims for damages, statutory attorney fees, litigation expenses and costs, each of the parties to this Agreement, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners and

LAW OFFICES OF
**PAUL L. REIN**
00 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-8-
G:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-16-10.wpd

1  assigns, releases and forever discharges each other Party and all officers,
2  directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent
3  companies, employees, agents, attorneys, insurance carriers, heirs, predecessors,
4  and representatives of each other Party, from all claims, demands, actions, and
5  causes of action of whatever kind or nature, presently known or unknown, arising
6  out of or in any way connected with the lawsuit.
7
8  **TERM OF THE AGREEMENT:**
9      13.    This Agreement shall be in full force and effect for a period of
10 twenty four (24) months after the date of entry of this Agreement, or until the
11 injunctive relief contemplated by this Order is completed, whichever occurs later.
12 The Court shall retain jurisdiction of this action to enforce provisions of this
13 Order for twenty four (24) months after the date of this Agreement, or until the
14 injunctive relief contemplated by this Order is completed, whichever occurs later.
15     14.    The parties jointly request the Court not dismiss the case because
16 issues of damages, attorneys' fees, litigation expenses and costs remain
17 unresolved.
18
19 **SEVERABILITY:**
20     15.    If any term of this Agreement is determined by any court to be
21 unenforceable, the other terms of this Agreement shall nonetheless remain in full
22 force and effect.
23
24 **SIGNATORIES BIND PARTIES:**
25     16.    Signatories on the behalf of the parties represent that they are
26 authorized to bind the parties to this Agreement.  This Agreement may be signed
27 in counterparts and a facsimile signature shall have the same force and effect as
28 an original signature.

LAW OFFICES OF
PAUL L. REIN
30 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-9-
S:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

1  Dated: _5-10_, 2010          PLAINTIFF FLORINE HOLMES

2

3

4                          _Florine Beowler Holmes_
                              FLORINE HOLMES
5

6

7  Dated: _5/10_, 2010          DEFENDANT DENNY'S, INC.

8

9

10                         By: _Susan Wallace_

11                         Printed Name: _Susan Wallace_

12                         Title: _ROFO_

13

14

15  Dated: _5/10_, 2010         DEFENDANT PROMPT FOOD SERVICE, INC.

16

17

18                         By: _B Law T_

19                         Printed Name: _DAVINDER. R. CHAWLA_

20                         Title: _President_

21

22

23

24

25

26

27

28

LAW OFFICES OF
PAUL L. REIN
10 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-2503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-19-
S:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

1   Dated: 5/10 , 2010          DEFENDANT FRANK HERNANDEZ

2

3

4                               FRANK HERNANDEZ

5

6   APPROVED AS TO FORM:

7   Dated: MAy 10 2010           LAW OFFICES OF PAUL L. REIN

8                                GEARINGER LAW GROUP

9

10

11  By: _____
                                 PAUL L. REIN, ESQ.
12                               Attorneys for Plaintiff
                                 FLORINE HOLMES

13  Dated: 5/18 , 2010           LITTLER MENDELSON, P.C.

14

15

16  By: _____
                                 TODD BOYER, ESQ.
17                               Attorneys for all Defendants

18

19

20                    **ORDER**

21       Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

22  On or before **June 18, 2010** the parties shall file a Joint Statement updating the Court on the
    status of the remaining issues. The parties shall appear on **June 28, 2010 at 10:00 AM** for a
23  Status Conference.

24  Dated: May 18, 2010

25                               United States District Judge

26

27

28

LAW OFFICES OF
PAUL L. REIN
0 LAKESIDE DR., SUITE A
AKLAND, CA 94612-3503
(510) 832-5001

TERMS OF FINAL SETTLEMENT AGREEMENT
REGARDING INJUNCTIVE RELIEF ONLY
CASE NO. 09-4785 JW

-11-   F:\CASES\D\DENNY'S-HOLMES\PLEADINGS\SETTLEMENT AGREEMENT 5-10-10.wpd

ATTACHMENT A

**Denny's Restaurant**
311 S. Mathilda Ave.
Sunnyvale, CA 94086

**DISABILITY ACCESS EVALUATION**

Survey performed by: _____

ACCESS COMPLIANCE SERVICES
Jonathan Adler, Principal
CA Certified Accessibility Specialist (CASp) #003
CA Contractor Lic # 707965
ICC Accessibility Inspector/Plans Examiner # 0886919-21

Inspection Date: 15 January 2010

**Contents**

I.      Scope of Evaluation ............................................................................................................2

II.     Basis for Identifying Inaccessible Features ......................................................................2

III.    Basis For Determining The Requirement To Correct Inaccessible Features .................2

IV.     Summary of Inaccessible Conditions: Current and Prior to Recent Modifications ........4

V.      Recommendations ...............................................................................................................7

VI.     Inventory of Architectural Barriers to Access ..................................................................9

VII.    Attachments..........................................................................................................................18

## I.  SCOPE

The following report provides an evaluation of Denny's Restaurant regarding compliance with the state and federal requirements concerning accessibility for persons with disabilities. The findings are based on my physical site inspection that was conducted on 1/15/10, and on an examination of documents concerning this facility that are on file at the City of Sunnyvale Planning Department, including permits, inspection records, and blueprints. I verified my findings by observation and measurements, and by photographing various public facilities at the restaurant, including the parking, entrance, dining areas, and the public restrooms.

## II. BASIS FOR IDENTIFYING INACCESSIBLE FEATURES

• ANSI A117.1-1961 .................................................................................................... (1970 to 1981)
American National Standards Institute standards for accessibility, as applied to public accommodations in California pursuant to Govt. Code 4450 and H&S Code 19955

• CA Code of Regulations, Title-24 Part 2, Volume 1  ................................................ (1982 to present)
The California Building Code as applies to public accommodations, pursuant to CA Health & Safety Code 19955

• The Americans with Disabilities Act Title III–28 CFR Part 36, Appendix A ................ (1990 to present)
The Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities

## III. BASIS FOR DETERMINING THE REQUIREMENT TO CORRECT INACCESSIBLE FEATURES

**1. Violations:** Architectural features that failed to meet the applicable state or federal regulations when they were originally constructed are required to be corrected. This applies to:

a) Newly constructed facilities that were improperly built
b) Alterations to existing facilities that were improperly built, with or without a permit.
c) Path of Travel - Alterations in which an accessible path of travel was not properly provided to the altered area. Under California law since 1982, and under the ADA since 1990, the altered area was required to comply with disabled access standards in addition to another requirement that was also triggered, called *path of travel*.

*Path of travel* requires that the route to the altered area must be made accessible, which includes parking when it is provided, as well as exterior routes, an entrance, interior routes as needed, the restrooms that serve the altered area, and drinking fountains and telephones that serve the altered area. When the cost of providing the path of travel is an *unreasonable hardship*, that is it exceeds 20% of the project's total cost, the access improvements can be limited to that which can be accomplished for that amount (i.e. 20% of the total cost). However, under California law, the path of travel improvements on large projects cannot be capped based on an unreasonable hardship.  A large project is one where the cost exceeds an annually adjusted valuation index, or where over a three-year period a series of projects on the same path of travel cost more than that threshold.

## 2. Architectural Barriers Under The ADA

Since 1990, the Americans with Disabilities Act, at section 42 USC 12182 (b)(2)(A)(iv) has required that features that do not meet the standards for access (ADAAG), are barriers and must be corrected. This obligation applies to existing facilities regardless of the age of the building or whether any construction or alterations have been done, although special allowances may apply to truly historic buildings. The extent to which the obligation applies is limited to tasks that are "readily achievable".

There is no formulaic definition of what meets the standard of "readily achievable". It is determined in part on the "overall financial resources" of the responsible parties; the landlord and the operator of a public accommodation.

*ADA Title III Sec.36.201*
*(b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.*

Under the ADA an access barrier is "readily achievable" if the removal is "easily accomplishable and able to be carried out without much difficulty or expense." Factors to be considered when determining whether removing a barrier is "readily achievable" are set out in the ADA §301 (9) [42 USC 12181], which states:

*(9) READILY ACHIEVABLE- The term `readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--*
    *(A) the nature and cost of the action needed under this Act;*
    *(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;*
(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

    *(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.*

## IV. SUMMARY OF ARCHITECTURAL BARRIERS

**PARKING:**
- <u>Quantity</u>: Only two accessible spaces are provided in a parking lot that requires 3.
- <u>Ground Surface</u>: Pavement and striping in the area of accessible parking is deteriorated, creating an inaccessible gravelly surface.
- <u>Signage</u>: One parking space lacks a sign that identifies it as van-accessible, and enforcement signage, which warns that unauthorized vehicles parked in accessible spaces will be towed, is not posted as required.

**ROUTE TO ENTRANCE**
- A <u>Curb Ramp</u> at the head of the accessible parking space:
  - Poses an excessively high, abrupt vertical change of level at the base of the ramp
  - Compels people to travel a route, in which the slope, perpendicular to the direction of    travel, is 3 to 4 times steeper than allowed.
- <u>Ramped Walkway</u>: A 16-ft long, ramped section of the walkway from the accessible parking spaces to the sidewalk outside the front entrance provides no handrails.
- <u>Newly Constructed Pedestrian Ramp</u> from the Mathilda Ave. sidewalk to Denny's front entry door provides a handrail on only one side the ramp.
- <u>Stairs</u> at the front entry lack required visual striping at the outer edge of each stair tread, and no handrails are provided.
- <u>Symbol of Accessibility</u> is not displayed at the front entry door.

**MEN'S RESTROOM**
- Signage: The door-mounted geometric symbol does not contrast with the door and the tactile (raised letter and Braille) sign is mounted too low• Entry Door Landing, on the hallway side, is only 35-inches deep where minimum 48-inch is required.• Door Operation requires excessive force to open and the door closes too quickly
- Toilet stall clear floor space is inaccessible because the door swings into the stall, leaving inadequate space to position a wheelchair that is outside of the swing of the door, resulting in the following:
  - A person's wheelchair blocks the door from closing and providing privacy.
  - The door blocks a person from maneuvering his wheelchair into a position adjacent to the toilet for a safe, lateral transfer to the fixture.
- Side Grab Bar does not extend the required distance from the rear wall of the stall and beyond the leading end of the toilet
- Toilet paper dispenser is improperly located directly above the side grab bar.
- Seat Cover dispenser is improperly located behind the toilet without provided the required clear floor space to approach the dispenser.
- Coat hook inside the accessible stall is too high.
- Urinal is 3-1/2" higher than the maximum allowable height.
- Pipe insulation is not installed on the drain and supply lines under the lavatory.

**WOMEN'S RESTROOM**

- Signage: The door-mounted geometric symbol does not contrast with the door and tactile (raised letter and Braille) signage is not provided at all.
- Door Operation requires excessive force to open and the door closes too quickly
- Toilet Stall Door Landing is only 36" deep on the exterior side of the door, where a minimum of 48" is required
- Toilet stall clear floor space is inaccessible because the door swings into the stall, leaving inadequate space to position a wheelchair that is outside of the swing of the door, resulting in the following:
     - A person's wheelchair blocks the door from closing and providing privacy.
     - The door blocks a person from maneuvering his wheelchair into a position adjacent to the toilet for a safe, lateral transfer to the fixture.
- Side Grab Bar does not extend the required distance from the rear wall of the stall and beyond the leading end of the toilet
- Toilet paper dispenser is improperly located directly above the side grab bar.
- Seat Cover dispenser is improperly located behind the toilet without provided the required clear floor space to approach the dispenser.
- Pipe insulation is not installed on the drain and supply lines under the lavatory.

**SEATING**

- Accessible seating that meets all of the code specified dimensions for clear height, width, and depth of wheelchair seating spaces are not provided. Approximately 8 such wheelchair-seating spaces are required (5% of the total seating).

**PRIOR TO OCTOBER 7, 2009**

Denny's front entrance, which was, and still is the only public entrance to the restaurant, was not accessible until some time after 10/07/09 when a new ramp was constructed, because prior to the new ramp the door was accessed from a raised platform that was reachable only by climbing stairs **(See Figure 00: Former Entrances).** The regulations required that an accessible primary public entrance be provided, and for purposes of the requirements, the term "entrance" included the vertical access leading to an entrance platform.

> *At least one accessible route within the boundary of the site shall be provided from public transportation stops, accessible parking and accessible passenger loading zones and public streets or sidewalks to the accessible building entrance they serve. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public* **(CBC 1114B.1.2, and ADAAG Section 4.3.2(1))**

> *"ENTRANCE means any access point to a building or portion of a building or facility used for the purpose of entering. An entrance includes the approach walk, <u>the vertical access leading to the entrance platform</u>, the entrance platform itself, vestibules if provided, the entry door(s) or gate(s), and the hardware of the entry door(s) or gate(s)."* **(CBC 1102B, and ADAAG Section 3.5)**

Prior to constructing the new ramp, Denny's relied on an exit door on the side of the building, which could be reached without climbing stairs, in order to provide access for persons with disabilities. That system was not accessible for a number of reasons.

1. Directional signage was not posted at the public entrance to indicate the existence of an alternative entrance, and its location.

> *Entrances which are not accessible shall have directional signage complying with Section 1117B.5.1 Items 2 and 3, which indicates the location of and route to the nearest accessible entrance.* **(CBC 1117B.5.8.1.2)**

> *Accessible entrances when not all are accessible (inaccessible entrances shall have directional signage to indicate the route to the nearest accessible entrance***) (ADAAG Section 4.1.2(7)(c))**

2. Most significantly, the side door was not a primary pubic entrance but rather a separate, segregated way into the restaurant that was only for persons with disabilities. Moreover, it was not even an entrance. There was no hardware on the exterior side of the door to open it.  It was ostensibly an exit-only door. It was not operable from the exterior and persons with disabilities who previously wanted to enter the restaurant needed to ring a bell to summon staff to unlock and open it.

Furthermore, even had door hardware been provided to open the door from the exterior, the door was not independently usable by persons using wheelchairs, scooters, walkers, or crutches because of the lack of required maneuvering space. There is approximately 3" of clear floor area beyond the latching edge of the door **(See Figure 00: Former Entrances).** CA Building Code requires 24" of clearance and ADAAG requires 18" of clearance in order to allow room for a person to position his mobility device outside of the sweep of the door, thus allowing it to open.

> *" the required "primary entrance" must necessarily be burdened by a substantial flow of pedestrian traffic, and that therefore a public restaurant entrance used by no patrons other than the physically handicapped cannot realistically be a "primary entrance*.**" (Deukmejian v. CHE 150 Cal App 3d)**

> *Separate benefit.--It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others*. **(ADA Public Law 101-336, Section 302(1)(A)(iii))**

> *Integrated settings.--Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual*.  **(ADA Public Law 101-336, Section 302(1)(B))**

## V. RECOMMENDATIONS

**A) Parking**

**1.** Install 1 additional accessible parking space

**2.** Repave and stripe the two existing accessible parking spaces

**3.** Install required "Van-Accessible" signage at the van parking space and enforcement signs ("tow-away") at the parking lot entrances

**B) Route to Entrance**

**1.** Replace the existing curb with a "Case-C" curb ramp (See CBC Figure 11B-20B) in which the new ramp provides a bottom landing that is level with the existing parking lot and the walkway ramps back up in opposite directions to the level of the existing walkway (**See attached Figure-01**)

**2.** Install handrails at both sides of the 16-ft. long section of walkway that slopes more steeply than 5%, which is located on the south side of the building where the route from accessible parking joins the public sidewalk on Mathilda Ave.

**3.** Install a handrail in the interior side of the new pedestrian ramp that rises from the sidewalk on Mathilda Ave. to the restaurant entrance.

**4.** Paint a two-inch wide contrasting color stripe at the outer edge of each stair tread and install handrails on both sides of the stairs.

**5.** Adjust the door closer to require no more than 5-lb. of force to open the doors and install a sign at the entry that displays the symbol of accessibility.

**C) Men's Restroom**

**1.** Raise the tactile sign so that it is centered 60" above the floor and change the color of the door or the geometric sign (triangle) so that they contrast with each other.

**2.** Install a power door opener to mitigate the lack of accessible door landing that results from the narrow hallway. (Properly adjusted, the power opener will also remedy the currently non-compliant door pressure and closing speed)

**3.** Provide accessible maneuvering space to approach the toilet and maneuver to a position adjacent to it, by performing a), b), or c):
   a) Swing the door outward, away from the interior of the toilet stall
   b) Redesign the restroom to allow a toilet stall where the door would swing into the stall and still provide adequate room to close the door, approach and maneuver adjacent to the fixture.
   c) Remove the privacy partition around the toilet and convert the room into a single-user restroom

**4.** Relocate the side grab bar; coat hook; toilet paper and seat cover dispensers to meet requirements and wrap lavatory pipes with insulation.

**5.** Lower the urinal from 20-1/2" above the floor to a height no greater than 17" above the floor.

## D) Women's Restroom

1. Install tactile signage on the wall adjacent to the latching side of the door, and change the color of either the sign or the door to provide a distinct contrast between the two elements.

2. Adjust the door closer to require no more than 5-lbs. of force to open and to close no faster than 3 seconds.

3. Modify the 3-toilet restroom to correct the current lack of accessible door landing at the accessible toilet stall and the inadequate maneuvering space inside the compartment, by converting the room to a 2-toilet restroom per attached **Figure-4**, or performing equivalent modifications.

4. Relocate the side grab bar; toilet paper and seat cover dispensers to meet requirements and wrap lavatory pipes with insulation.

## E) Dining Room Seating

1. Replace existing tables as needed to ensure 8 wheelchair accessible seating spaces that are on accessible routes not less than 36-inch wide. Accessible tables may be the following sizes or larger:
   • 36" by 36" rectangular table with support legs in each corner.
   • 42" diameter table with a single 4" diameter post that sets on a low-profile support base.

## VI. FINDINGS: INVENTORY OF ARCHITECTURAL BARRIERS

LEGEND - For efficiency purposes, this section employs the use of abbreviations as follows:
ADAAG=    Americans with Disabilities Act Accessibility Guidelines
AFF     =    Above Finish Floor
CBC     =    California Building Code
CL      =    Centerline
DW      =    Detectable Warning Material  (Raised Truncated Domes)
ISA     =    International Symbol of Accessibility
ISHL    =    International Symbol of Hearing Loss
Title 24/CBC    =    California Title 24 Accessibility Standards
8.33%   =    1:12 slope
5.00%   =    1:20 slope
2.00%   =    1:50 slope

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| **A** | | **PARKING** | | | | | | |
| A1 | Accessible Parking Spaces  Quantity of | 75 total parking spaces are provided  2 parking spaces are reserved for persons with disabilities. | 1129B.1  Table 11B-6 | General. Each lot or parking structure where parking is provided for the public as clients, guests or employees, shall provide accessible parking as required by this section  <u>Non-Medical Facility</u>  1–25_____1 26–50_____2 **51–75_____3 ✔** 76–100_____4 101–150_____5 151–200_____6 201–300_____7 301–400_____8 401–500_____9 501–1,000_____10 | 4.1.2(5)(a) | *(a)* If parking spaces are provided for self-parking by employees or visitors, or both, then accessible spaces complying with 4.6 shall be provided in each such parking area in conformance with the table below  <u>Non-Medical Facility</u>  1–25_____1 26–50_____2 **51–75_____3 ✔** 76–100_____4 101–150_____5 151–200_____6 201–300_____7 301–400_____8 401–500_____9 501–1,000_____10 | No Photo | Install 1 additional accessible parking space |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| A2 | Parking Striping<br><br>Maintenance | The pavement striping is approximately 40% worn away | CBC 1101B.3 | **Maintenance of accessible features.** A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be accessible to and usable by persons with disabilities | 1992 Title III of the ADA Sec.36.211 | **Maintenance of accessible features** (a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.<br>(b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. | A2 | Restripe accessible parking spaces |
| A3 | Parking Space<br><br>Ground Surface | The ground surface of the access aisle is covered with loose gravel from deteriorated pavement | *1124B.1* | Ground and floor surfaces along accessible routes and in accessible rooms and spaces, including floors, walks, ramps, stairs and curb ramps, shall be stable, firm, slip resistant and shall comply with this section | 4.5.1 | Ground and floor surfaces along accessible routes and in accessible rooms and spaces including floors, walks, ramps, stairs, and curb ramps, must be stable, firm, slip-resistant, and must comply with 4.5. | A3 | Repave accessible parking spaces |
| A4 | Parking Space<br><br>Signage | The van-accessible space lacks the specific sign that identifies it as such | 1129B.4 | Van spaces must have an additional sign that states "Van Accessible". | 4.6.4 | Van spaces shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility | A4 | Install the required parking space signage on a post or a wall with the bottom edge 80" above the ground. |
| A5 | Parking Signage<br><br>Enforcement sign | *"Tow-Away"* signage is not posted anywhere | 1129B.4 | Tow-Away signage must be installed at each entrance to the lot or visible from each parking space. Sign must be min. 17" x 22", with min. 1" tall letters, and state:<br>"*Accessible spaces not displaying distinguishing placards or license plates issued for persons with disabilities may be towed away at owner's expense. Towed vehicles may be reclaimed at _ _ _ _ or by telephoning _ _ _ _ _ _ "*<br><br>Blank spaces are to be filled in with appropriate information as a permanent part of the sign. | Not Addressed | Not addressed | No Photo | Install tow-away signage at each entrance to the parking lot or at a location clearly visible from each accessible parking space. |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| **B** | | **ROUTE TO ENTRANCE** | | | | | | |
| B1 | Base of Curb Ramp | There is a 3/4" abrupt vertical change of level between the sidewalk and curb ramp. | 1127B.5(3) | Transitions from ramps to walks, gutters, or streets shall be flush and free of abrupt changes. | 4.7.2 | Transitions from ramps to walks, gutters, or streets shall be flush and free of abrupt changes. | B1 | Recommendation at Item B2 resolves this item. |
| B2 | Walkway from Parking to Public Sidewalk

Cross-Slope | Excessive Cross-Slopes

Traveling from the parking space access aisle to the public sidewalk, which is the route to the restaurant's front entrance, encounters cross-slopes greater than 8.0% as one travels over the curb ramp. | 1133B.7.1.3 | Surface cross slopes shall not exceed one unit vertical in 50 units horizontal (2-percent slope). | 4.3.7 | Nowhere shall the cross slope of an accessible route exceed 2% (1:50). | B2-a / B2-b

B2-c / B2-d

B2-e / B2-f

**FIGURE-01** | Replace curb ramp with a "Case-C" per CBC Figure 11B-20B |
| B3 | Walkway from Parking to Public Sidewalk

Handrails | Traveling from the parking space access aisle to the public sidewalk, which is the route to the restaurant's front entrance, encounters a ramp* that lacks handrails.

*Ramp is 12-lineal feet. The slope ranges from 6.7% to 8.0%* | 1133B.5.1

1133B.5.5.1 | Any path of travel shall be considered a ramp if its slope is greater than 1 foot rise in 20 feet of horizontal run (5% gradient)

Handrails are required on both sides of each ramp. | 4.8.1

4.8.5 | Any part of an accessible route with a slope greater than 1:20 (5.0%) shall be considered a ramp and shall comply with 4.8.

Handrails are required on both sides of a ramp that rises more than 6-in. or projects horizontally more than 72-in. | B3-a B3-b | Install required handrails on both sides of the walkway where the slope exceeds 5% |
| B4 | From Public Sidewalk to Restaurant Entrance

NEW RAMP | A handrail is provided on only one side of the new 16-ft long ramp*

The ramp was recently constructed, without a permit, some time between 10/07/09 and 1/15/10. There was no ramp to the entrance prior to 10/07/09. | 1133B.5.5.1 | Handrails are required on both sides of each ramp. | 4.8.5 | Handrails are required on both sides of a ramp that rises more than 6-in. or projects horizontally more than 6-ft. | B4 | Install handrail on the interior side of the ramp |
| B5 | From Public Sidewalk to Restaurant Entrance

Stair Handrails | Handrails are not provided | 1133B.4.1.1 | Continuous handrails are required on both sides of each stairway. | 4.9.4(1) 4.26 | Continuous handrails are required on both sides of each stairway. | B5 | Install handrails on both sides of the stairway |
| B6 | From Public Sidewalk to Restaurant Entrance

Stair Striping | No striping is provided at the outer edge of each stair tread | 1133B.4.4 | Each stair nosing on exterior stairs, and the top and bottom nosing on interior stairs, must have a contrasting color stripe, 2" wide and as close as possible to the nosing edge but never more than 1" away. | - - - - - | - - - - - - - - - - - - - - - - - - | B6 | Paint 2" wide contrasting strip near the nosing of each stair tread |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| B7 | Public Entrance<br><br>Door Operation | Left leaf of paired entry doors 9-lb. force is required to open<br><br>Right leaf of paired entry doors 22-lb. of force is required to break the friction between the door and its threshold (8-lbs afterwards) | 1133B.2.5 | Maximum effort to operate exterior and interior doors may not exceed 5-pounds), | 4.13.11 | Interior-5 lbs<br>Exterior-*reserved* | No Photo | Adjust door closers to ensure maximum 5-lb. of force is needed to open the doors. |
| B8 | Public Entrance<br><br>Signage | Accessible entry door does not display the symbol of accessibility | 1117B.5.8.1.2 | All accessible building entrances must be identified with the International Symbol of Accessibility | - - - - - | ADAAG does not address | B8 | Install an approximately 6" x 6" sign or decal at the entry that displays the ISA (symbol of accessibility) |
| **C** | | **MEN'S RESTROOM** | | | | | | |
| C1 | Signage-<br>No Contrast | The brown geometric sign does not contrast from the adjacent brown color of the door. | 1115B.6 | The color and contrast of the symbol shall be distinctly different from the color and contrast of the door. | 4.30.5 | The characters and background of signs shall be eggshell, matte, or other non-glare finish. Characters and symbols shall contrast with their background -- either light characters on a dark background or dark characters on a light background. | C1 | Change the color of either the sign or the door to provide a distinct contrast between the two elements. |
| C2 | Signage-<br>Installed Height | The tactile sign is centered 54" AFF. | 1117B.5.7 | Mounting height shall be 60" AFF to the centerline of the sign. | 4.30.6 | Mounting height shall be 60" AFF to the centerline of the sign. Mounting location for such signage shall be so that a person may approach within 3" of signage without encountering protruding objects or standing within the swing of a door. | See C1 | Relocate tactile signage so that it is centered 60-inch above the floor. |
| C3 | Entry Door -<br>Landing Depth | The door landing, on the hallway side of the entry door, is only 35-3/8" deep (13" less than what is required) | 1133B.2.4.2 | The level area must have a length opposite the direction of door swing of 48 inches | 4.13.6 | 48-in. push -side hinge approach, with latch and closer | **FIGURE-02** | Perform A or B:<br><br>A) Increase the depth of the landing<br>B) Install a powered door opener. |
| C4 | Entry Door-<br>Force to Open | Restroom entry door requires 10-lb. of force to open it. | 1133B.2.5 | Maximum effort to operate exterior and interior doors may not exceed 5-pounds), | 4.13.11 | Interior-5 lbs<br>Exterior-*reserved* | No Photo | Adjust or replace the door closer to achieve maximum 5-lbs. pressure, or install a power door opener as described as option B) in Item C3 above. |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| C5 | Entry Door- Closing Speed | Door closes in 2.4 seconds | 1133B.2.5.1 | Doors with closers may not close faster than 3 second from an open position of 70 degrees to a point 3-inches from the latch. | 4.13.10 | Doors with closers may not close faster than 3 second from an open position of 70 degrees to a point 3-inches from the latch, | No Photo | Adjust or replace the door closer to achieve minimum 3-seconds of closing speed, or install a power door opener as described as option B) in Item C3 above. |
| C6 | Toilet Stall- Maneuvering Space | Maneuvering space inside of the stall is unusable for persons using a wheelchair.<br><br>The following inaccessible conditions result because the compartment door swings into the toilet stall, leaving no space to position a wheelchair that is outside of the swing of the door:<br><br>a) A person's wheelchair blocks the door from closing and providing privacy<br><br>b) Door blocks a person from maneuvering his wheelchair into a position adjacent to the toilet for a safe, lateral transfer to the fixture. | 1115B.3.1 (4) Item 4.3<br><br><br><br><br>1115B.3.1(2) | A 60" wide by 48" deep clear floor space is required in front of the toilet, into which no door may encroach<br><br>**Accessible water closet compartment:** If the compartment has an end-opening door, a minimum 60-inches-wide and 48-inches-deep clear floor space shall be provided in front of the water closet.<br><br>Doors shall not swing into the clear floor space required for any fixture. | 4.17.3 | The size and arrangement of the standard toilet stall shall comply with Figure 30(a)***<br><br>*** Figure 30(a) illustrates the end-opening toilet stall with the entry door swinging outward, away from the stall. | C6<br><br>FIGURE-03 | Reverse the swing of the door to swing outward, away from the toilet stall rather than into it. |
| C7 | Side Grab Bar- Position | The leading end of the bar extends only 48 inch from the rear wall behind the toilet | 1115B.4.1 Item 3.1 | The leading end shall extend min. 24" in front of the toilet and at least 54" from the rear wall. | Fig. 29 | Side grab bar shall be a min. 54" from the rear wall. | See C8 | Relocate the grab bar so that its leading end is 54" from the wall behind the toilet. |
| C8 | Toilet Paper Dispenser-Position | Toilet paper dispenser is mounted on the wall directly above the side grab bar, obstructing the safe use of the bar. | 1115B.8.4 | Toilet tissue dispensers shall be located on the wall within 12 inches (305 mm) of the front edge of the toilet seat, mounted below the grab bar, at a minimum height of 19 inches (485 mm), and 36 inches (914 mm) maximum to the far edge from the rear wall. Dispensers that control delivery or that do not permit continuous paper flow shall not be used. See Figure 11B-1A. | - - - - | Not addressed. | 0C8 | Relocate the toilet paper dispenser to below the side grab bar, with the paper outlet no closer than 19" to the floor. |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| C9 | Seat Cover Dispenser – Position | The seat cover is mounted in an inaccessible location – behind the toilet fixture. | 1115B.8.3 | For either a forward or side reach there must be a 30" x 48" clear floor space that is aligned in front of the object to allow forward or parallel approach.<br><br>*1117B.6.2. Clear floor space. Clear floor space complying with Section 1118B.4 that allows a forward or parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles and other operable equipment.* | 4.22.7<br><br>4.27.3<br><br>4.2.5 & 6 | If controls, dispensers, receptacles, or other equipment are provided, then at least one of each shall be on an accessible route | See C8 | Relocate the toilet seat covers to a clear wall of the toilet stall. |
| C10 | Coat Hook - Position | Coat hook inside of the stall is 65-3/4" high | | Maximum 48" AFF or 54" if side approach is possible | | Maximum 48" AFF or 54" if side approach is possible | No Photo | Lower the coat hook to 48" AFF |
| | | | 1118B.5 | When only a front approach is possible, the maximum allowable height is 48" | 4.2.5 | The maximum allowable height is 48" when only a front approach is possible | | |
| | | | 1118B.6 | The maximum allowable height is 54" when side approach is possible | 4.2.6 | The maximum allowable height is 54" when side approach is possible | | |
| C11 | Urinal- Height | The rim of the urinal is 20-1/2" AFF | 1115B.4.2(1) | Urinal rim at maximum height of 17" AFF. | 4.18.2 | Urinal rim at maximum height of 17" AFF. | C11 | Lower the urinal so that its rim is no higher than 17" above the floor. |
| C12 | Lavatory- Pipe Insulation | The supply and drain lines are not insulated. | 1115B.4.3(4) | Hot water and drainpipes accessible under lavatories shall be insulated or otherwise covered. There shall be no sharp or abrasive surfaces under lavatories. | 4.19.4 | Hot water and drain pipes under lavatories shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories. | C12 | Wrap insulation around all pipes below the lavatory |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| **D** | **WOMEN'S RESTROOM** | | | | | | | |
| D1 | Signage- No Contrast | The brown geometric sign does not contrast from the adjacent brown color of the door. | 1115B.6 | The color and contrast of the symbol shall be distinctly different from the color and contrast of the door. | 4.30.5 | The characters and background of signs shall be eggshell, matte, or other non-glare finish. Characters and symbols shall contrast with their background -- either light characters on a dark background or dark characters on a light background. | D1 | Change the color of either the sign or the door to provide a distinct contrast between the two elements. |
| D2 | Signage- Tactile Raised Letter and Braille | Tactile Sign A tactile sign that displays raised letters and Braille, is not installed on the wall adjacent to the entry door | 1117B.5.1(2) | When signs identify permanent rooms and spaces of a building or site they must meet the requirements of raised characters and Braille | 4.1.3(16)(a) | Numbered rooms, restrooms, and exits must display tactile signage (i.e. Raised characters and Braille) on the wall beside the latching edge of the door, centered at 60" AFF | See D1 | Install tactile signage on the wall adjacent to the latching side of the door. |
| D3 | Entry Door- Force to Open | Restroom entry door requires 11-lb. of force to open it. | 1133B.2.5 | Maximum effort to operate exterior and interior doors may not exceed 5-pounds), | 4.13.11 | Interior-5 lbs Exterior-*reserved* | No Photo | Adjust the door closer or replace it if necessary to achieve maximum 5-lb. of pressure. |
| D4 | Entry Door- Closing Speed | Door closes in 2.5 seconds | 1133B.2.5.1 | Doors with closers may not close faster than 3 second from an open position of 70 degrees to a point 3-inches from the latch. | 4.13.10 | Doors with closers may not close faster than 3 second from an open position of 70 degrees to a point 3-inches from the latch, | No Photo | Adjust the door closer or replace it if necessary to achieve minimum 3 seconds closing speed. |
| D5 | Toilet Stall Door – Depth of Landing | The depth of the door landing outside of the stall is only 36" deep (push-side of the door) | 2007-CBC 1115B.3.1 Item 4.5 | • 48" deep landing if push-side of door<br><br>• 60" deep landing if pull-side of door<br><br>Maneuvering space at the compartment door shall comply with Sections 1133B.2.4.2 and 1133B.2.4.3, and in no case shall the space immediately outside of the water closet compartment door be less than 48 inches as measured perpendicular to the compartment door in its closed position. | 4.17.3 Fig. 30 | 42" deep if latch approach 48" deep for all other approaches | D5-a / D5-b | See recommendation at Item D6 |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| D6 | Toilet Stall-Maneuvering Space | Maneuvering space inside of the stall is unusable for persons using a wheelchair.<br><br>The following inaccessible conditions result because the compartment door swings into the toilet stall, <u>leaving no space to position a wheelchair that is outside of the swing of the door</u>:<br><br>a) A person's wheelchair blocks the door from closing and providing privacy<br><br>b) Door blocks a person from maneuvering his wheelchair into a position adjacent to the toilet for a safe, lateral transfer to the fixture. | 1115B.3.1 (4) Item 4.3<br><br><br><br><br>1115B.3.1(2) | A 60" wide by 48" deep clear floor space is required in front of the toilet, into which no door may encroach<br><br>**Accessible water closet compartment:** If the compartment has an end-opening door, a minimum 60-inches-wide and 48-inches-deep <u>clear floor space shall be provided in front of the water closet.</u><br><br><u>Doors shall not swing into the clear floor space required for any fixture.</u> | 4.17.3 | The size and arrangement of the standard toilet stall shall comply with Figure 30(a)***<br><br>*** Figure 30(a) illustrates the end-opening toilet stall with the entry door swinging outward, away from the stall. | FIGURE-04 | Reconfigure the restroom layout so that the door to the accessible toilet stall swings away from the compartment provides a door landing that is minimum 60-inch deep on the pull-side of the door and minimum 48-inch deep on the push-side<br><br>**SEE FIGURE 4** |
| D7 | Side Grab Bar-Position | The leading end of the bar extends only 48 inch from the rear wall behind the toilet | 1115B.4.1 Item 3.1 | The leading end shall extend min. 24" in front of the toilet and at least 54" from the rear wall. | Fig. 29 | Side grab bar shall be a min. 54" from the rear wall. | D7 | Relocate the grab bar so that its leading end is 54" from the wall behind the toilet. |
| D8 | Toilet Paper Dispenser-Position | Toilet paper dispenser is mounted on the wall directly above the side grab bar, obstructing the safe use of the bar. | 1115B.8.4 | Toilet tissue dispensers shall be located on the wall within 12 inches (305 mm) of the front edge of the toilet seat, <u>mounted below the grab bar,</u> at a minimum height of 19 inches (485 mm), and 36 inches (914 mm) maximum to the far edge from the rear wall. Dispensers that control delivery or that do not permit continuous paper flow shall not be used. See Figure 11B-1A. | - - - - | Not addressed. | See D7 | Relocate the toilet paper dispenser to below the side grab bar, with the paper outlet no closer than 19" to the floor. |

| # | ELEMENT | BARRIER | CBC | CBC Requirement | ADAAG | ADAAG Requirement | Photo | RECCOMMENDATION |
|---|---------|---------|-----|-----------------|-------|-------------------|-------|-----------------|
| D9 | Seat Cover Dispenser – Position | The seat cover is mounted in an inaccessible location – behind the toilet fixture. | 1115B.8.3 | For either a forward or side reach there must be a 30" x 48" clear floor space that is aligned in front of the object to allow forward or parallel approach.<br><br>*1117B.6.2. Clear floor space. Clear floor space complying with Section 1118B.4 that allows a forward or parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles and other operable equipment.* | 4.22.7<br><br>4.27.3<br><br>4.2.5 & 6 | If controls, dispensers, receptacles, or other equipment are provided, then at least one of each shall be on an accessible route | See D7 | Relocate the toilet seat covers to a clear wall of the toilet stall |
| D10 | Lavatory-Pipe Insulation | The supply and drain lines are not insulated. | 1115B.4.3(4) | Hot water and drainpipes accessible under lavatories shall be insulated or otherwise covered. There shall be no sharp or abrasive surfaces under lavatories. | 4.19.4 | Hot water and drainpipes under lavatories shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories. | D10 | Wrap insulation around all pipes below the lavatory |
| **E** | | **SEATING** | | | | | | |
| E1 | Accessible Seating | No seating spaces are provided that meet all of the code specified space requirements for wheelchair seating spaces. Except for 5 tables, which do not meet the requirements, all other seating is provided at fixed booths that are not accessible.<br><br>2 tables (which are comprised of two 30" x 30" tables that are pushed together) provide adequate height and width, but the depth is **only 13" deep.** *(Minimum 19" required)*<br><br>3 tables (which are 30" x 48" with a single center post) provide adequate height and depth, but the width is **only 22-1/2" wide.** *(Minimum 30" required)* | 1104B.5(4)<br><br>1122B | Each dining, banquet and bar area shall have one wheelchair seating space for each 20 seats, with at least one minimum wheelchair seating space per functional area and shall comply with Section 1122B, "Fixed or Built–in Seating, Tables, and Counters<br><br>Wheelchair seating shall be on an accessible route, have a surface that is 28" to 34" high, and provide accessible kneespace under the counter or tabletop, yielding:<br>30" min. width<br>27" min. height<br>19" min. depth | 5.1<br>4.1.3(18)<br>4.32.3<br>4.32.4 | Where fixed tables (or dining counters <u>where food is consumed but there is no service</u>) are provided, at least 5 percent, but not less than one, of the fixed tables (or a portion of the dining counter) shall be on an accessible route, have a surface that is 28" to 34" high, and provide accessible kneespace under the counter or tabletop. | E1-a<br>E1-b<br>E1-c | Replace the freestanding tables to ensure 8 wheelchair accessible seating spaces (5% of 160 total seats), in which each such space yields the following clearances:<br><br>Minimum 27" high<br>Minimum 30" wide<br>Minimum 19" deep<br><br>Note: Wheelchair accessible seating spaces could be provided by tables of the following sizes, or larger:<br><br>• 36" square table, with legs in each corner.<br><br>• 42" diameter table, with a single 4" post that sets in a low-profile support base. |

## VII.  LIST OF ATTACHMENTS

FIGURE-00      Former entrances

FIGURE-01      Steep cross-slope on route from parking to the restaurant entrance

FIGURE-02      Lack of accessible door landing at entry to Men's restroom

FIGURE-03      Lack of accessible maneuvering space in men's accessible toilet stall

FIGURE-04      Lack of accessible maneuvering space in women's accessible toilet stall and recommended solution

PHOTOS:        6 pages containing 29 total photographs

**Figure 00: Former Entrances**



Public entrance from Mathilda Ave.
Photo from http://maps.google.com



Public entrance from Mathilda Ave.
Photo by Barry Atwood



Former Alternative entrance at side of building.
Photo by Jonthan Adler (Jan. 15, 2010)



**FIGURE–01**

Cross-slope of wheelchair users path is 3 to 4 times steeper than maximum allowable 2% .

***ADAAG 4.3.7**  Nowhere shall the cross slope of an accessible route exceed 2% (1:50).*

A: Slopes 7.6&
B: Slopes 13.1%

**EXISTING
CONDITIONS**



Recommendation: "Case–C" curb ramp: See CBC Fig. 11B–20B

**FIGURE-02**



*(44" Required)*
39"

35-3/8"
*(44" Required)*

Men's Restroom

44"

54"

CBC Figure 11B-26
Hinge Approach to Push-Side of Door with Closer and No Latch

44" inch deep landing on the push side of the door **(CBC 1133B.2.4.2)**
42" inch deep landing on the push side of the door **(ADAAG 4.13.6)**

**Figure–03**  Men's Restroom



**Existing Conditions:** In–swinging door obstructs the specified 30" x 48" clear floor space for wheelchairs

71–1/2"

75–5/8"

30"

4–1/2"

**RECOMMENDATION:** Swing door to men's toilet stall outward

**Normal maneuvering** to postion a wheelchair adjacent to the toilet for a safe, lateral transfer



**FIGURE–04**
**Women's Restroom**

40"

36"

32–1/2"

**EXISTING**
**CONDITIONS**



95"

60"

**RECOMMENDATION**



A2.JPG



B1.JPG



A3.JPG



B2-a.JPG



A4.jpg



B2-b.JPG



B2-c.JPG



B2-f.JPG



B2-d.JPG



B3-a.JPG



B2-e.JPG



B3-b.JPG



B4.JPG



B8.JPG



B5.JPG



C1.JPG



B6.JPG



C6.JPG



C8.JPG                                      D1.JPG



C11.JPG                                     D5-a.JPG



C12.JPG                                     D5-b.JPG



D7.JPG



E1-b.JPG



D10.JPG



E1-c.JPG



E1-a.JPG

ATTACHMENT B

# ACCESS COMPLIANCE SERVICES
### 1721 Seabright Ave., Santa Cruz, CA 95062-2118

| Tel: (831) 429-4191 | ja-acs@sbcglobal.net | Fax: (831) 429-4192 |
|---|---|---|

20 April 2010

Margen & Associates
Peter Margen
614 Grand Avenue, Suite 321
Oakland CA 94610

RE: Holmes v Denny's Inc. Case No C09-4785 SBA

Dear Peter

As we agreed during our telephone discussion about Denny's restrooms on 4/19/10, I looked into how well the ideas you proposed for consideration would work if they were implemented:

**Men's Study:**
• Question: Widen the entry door to the room in lieu of installing a power door opener?

• Resolution: NO. This option does not work. It would result in the corner of the toilet stall being inside of the clear floor area that is required for strike-edge maneuvering space at the wider door, leaving inadequate space (25" wide) for a wheelchair user to position himself outside the sweep of the door as it opens.  See attachment **003 Study-Widen Mens Door**

An attached drawing titled **001 Settlement Option-Men** summarizes the key changes that are needed in the Men's restroom. Additional items that also need to be fixed are not shown in drawing 001, but rather are simply listed in Section C of my 1/15/10 report.  They are all items, which are easy to fix, such as relocating dispensers, grab bars, etc.

**Women's Study:**
• Question: Would the following set of tasks provide a solution for the women's restroom, and therefore be an acceptable alternative to the recommendation that was made in my 1/15/10 report in which one of the three toilets would have to be eliminated?
a) Retain all three toilets by removing a lavatory counter in order to lengthen the existing side-entry toilet stall, thus making it accessible
b) Install a wall-hung sink in the area immediately adjacent to the entry door
c) Install a power door opener to mitigate the lack of strike-edge clearance that would result from placement of the new sink.

• Resolution: YES, this option works very well. An attached drawing titled **002 Settlement Option-Women** shows how it would look. Additional restroom features that also need to be fixed are not shown in drawing 002, but rather are simply listed in Section D of my 1/15/10 report.  They are all items, which are easy to fix, such as relocating dispensers, grab bars, etc.

Sincerely,

*Jonathan Adler*

ACCESS COMPLIANCE SERVICES
Jonathan Adler, Principal
*CA Certified Accessibility Specialist (CASp) #003*
*CA Contractor Lic # 707965*
*ICC Accessibility Inspector/Plans Examiner # 0886919-21*



RECOMMENDED

* 42-1/2" space left as is, in order to maintain 60" dia. turning space in the room

*42-1/2"
(48" Req'd)

60"

37"

35-3/8"
(44" Req'd.)

B

A

1

2

EXISTING

75-1/2"

71-1/2"

42-1/2

30"

4-1/2"

**Settlement Study-01 Men's Restroom**
Perform Modifications 1 and 2
And recommendations from Section C of ACS Report of 1/15/10

1) Entry Door: Power door opener plus switches "A" and "B" installed to mitigate narrow hallway

2) Compartment Door: Hinged from opposite side as currently hinged, and swings away from stall.



**Settlement Study-02**
**Women's Restroom**

·Perform Modifications 1, 2, 3
And recommendations from Section D
of ACS Report of 1/15/10

1) **Entry Door:** Reverse door swing to allow relocation of lavatory. And to mitigate the resultant lack of strike-edge clearance on the hall side of the door, install power door opener. and switches A and B to

2) **Lavatory:** Remove sink counter in order to lengthen stall, and install a single wall-hung lavatory as shown

3) **Toilet Stall:** Increase length of compartment by extending the stall to the full depth of the room (128")

RECOMMENDED — 148-1/2"

128"

72" recommended
(59" minimum)

30"

B

A

EXISTING

69-7/8"

40"
(48" Req'd)

32-1/2"

36"
(48" Req'd)

## Study: Widen Men's Entry Door

**Settlement Study: Widen Men's Entry Door in Lieu of Installing Power Door Opener**

Resolution: Widening door does not work. It would result in the corner of the toilet stall being inside of the required clear floor space for strike-edge maneuvering space, leaving inadequate space (25" wide) for a wheelchair user to be outside the the sweep of the door as it opens.

